# SNOW *v.* SNOW.

### DIVORCE; CRUELTY; REVERSAL.

A decree of separation on the ground of cruelty will not be reversed, although the appellate court has grave doubt as to the sufficiency of the evidence to establish cruelty, where both parties declare that they cannot, and will not, live together, and the allowance for support and for attorney's fees is reasonable.

No. 3151. Submitted January 13, 1919. Decided March 3, 1919.

HEARING on an appeal by the defendant from a decree in the Supreme Court of the District of Columbia, sitting as an equity court, in a suit for divorce. *Affirmed.*

The COURT in the opinion stated the facts as follows:

Chester A. Snow appeals from decrees granting his wife, Addis H., a divorce *a mensa et thoro* on the ground of cruelty, awarding her the custody of their minor child, under certain limitations, directing him to pay to her for the support of herself and the child $500 a month, allowing her attorney's fees in the sum of $5,000, making provisions reserving to the court power to modify the decree in certain respects, and setting forth

other things not necessary to be mentioned here; also from a decree allowing $500 attorneys' fees for services in connection with the appeal.

The parties were married in July, 1913, the appellant being sixty-nine and the appellee about thirty-six years of age at the time. Appellant then lived on his farm at Fenwick, Maryland. With him resided his mother, about ninety-two years of age, a widowed sister, a widowed niece, and a son, about eighteen years of age. This the appellee knew prior to her marriage.

On the wedding trip, which was a short one, some differences arose between them. They returned to Fenwick in August, and a few days thereafter Mrs. Snow left for Elkton, Maryland, to visit her sister. After the completion of the visit she rejoined her husband at Fenwick. During a conversation with him in the following September she expressed dissatisfaction with the antenuptial agreement which had been made between them. Occasionally, she would be found weeping and exhibiting deep emotional distress. In the early days of October she and her husband left for a European trip. After a stay of about a month in France the husband returned to this country, leaving her to continue her travels. Dr. Crush, her sister-in-law, joined her in Italy and remained until December. Later Mrs. Emory, defendant's niece, and Chester, his son, met her in Rome, Mrs. Emery continued with her until June. Plaintiff's sister became a member of the party in May, and did not leave Mrs. Snow until the latter departed for home. In July Mrs. Snow gave birth to a son. As soon as she was able to travel she returned to this country, arriving in New York in the latter part of September, where she was met by her husband and escorted to Fenwick. She was not long there before it became apparent that she was very unhappy. Gradually she and her husband drew apart. They ceased to live together as man and wife, and the marital relation was never resumed thereafter.

Appellant, though a man of large income, was by no means generous in the amount of money which he placed at his wife's disposal. Yet he seemed to treat her in that respect as he did

the other members of his family.   He was not always as attentive or considerate as the ideal husband would be, but in the affairs of life the ideal is not often attained.   He has, he says, made the same provision in his will for the child of their union as for his other son, and we believe him.

When the child was a little over two years of age, or in November, 1916, Mrs. Snow mentioned to her husband that she was going to visit her brother in Virginia and bring the child along.   He requested her not to take the child, because he feared, as he expressed it, that it might contract measles, which were then prevalent in the place where the brother lived. She did not yield to the request, but on November 10, without advising him that it was her intention to leave that day, departed with the child for her brother's home.   Prior to this she had never expressed to her husband any purpose to leave him permanently, but on December 2 she wrote that further relations with him were impossible and that she would not return. The next month she commenced this suit.

*Mr. George P. Hoover* and *Mr. Frederic D. McKenney* for the appellant, in their brief cited:

Alberts's Comp. Stat. (D. C.) chap. 30, sec. 35, p. 276; *Barber* v. *Barber*, 153 N. Y. Supp. 258; *Barker* v. *Barker*, 26 L.R.A. (N.S.) 909, 914; *Becker* v. *Shaw*, 120 Ga. 1003; 1 Bishop, Marr. Div. & Sep. Secs. 1531, 1536, 1537, 1547, 1649, 1652; *Bohrer* v. *Otterback*, 2 App. D. C. 79; *Bowen* v. *Bowen*, (Mich.) 146 N. W. 272; *Brown* v. *Brown*, 129 Ga. 247; *Carpenter* v. *Carpenter*, 30 Kan. 744; *Close* v. *Close*, 25 N. J. Eq. 526; *Cooper* v. *Cooper*, 17 Mich. 209; 14 Cyc. p. 603 (Divorce); *Densmore* v. *Densmore*, 6 Mackey, 544; D. C. Code, secs. 966, 968; *Evans* v. *Evans*, 1 Hagg. Consist. Rep. 35, s. c. 4 Eng. Eccl. Rep. p. 310; *Everton* v. *Everton*, 5 Jones (N. C.) 208; *Haley* v. *Haley* (Cal.) 14 Pac. 95; *Hartford Fire Ins. Co.* v. *Reynolds*, 36 Mich. 504; *Hawkins* v. *Hawkins*, 65 Md. 108; *Hertz* v. *Hertz* (Minn.) 147 N. W. 826; *Hitchcock* v. *Hitchcock*, 15 App. D. C. 88; *Johnson* v. *Johnson*, 49 Mich.

640; *Jones* v. *Jones* (Ala.) 66 So. 5; *Jones* v. *Jones,* 60 Tex. 460; *Kefauver* v. *Kefauver* (Ky.) 57 S. W. 468; *Kientz* v. *Kientz* (Ark.) 149 S. W. 89; *Louisville & N. R. Co.* v. *Hill,* 115 Ala. 349; *MacDonald* v. *MacDonald* (Cal.) 25 L.R.A. (N.S.) 45, 48; *McDonough* v. *McDonough,* 20 App. D. C. 47; *Maschaur* v. *Maschaur,* 23 App. D. C. 95; *Maxwell* v. *Maxwell* (W. Va.) 71 S. E. 572; *Meyer* v. *Meyer* (Iowa), 151 N. W. 74; *Miller* v. *Miller* (Neb.) 131 N. W. 204; *Morris* v. *Morris,* 73 Am. Dec. 617; Nelson, Div. & Sep. secs. 252, 286, 287, 289; *Ogden* v. *Ogden,* 17 App. D. C. 111; *Pedersen* v. *Pederson* (Neb.) 128 N. W. 650; *Rebstock* v. *Rebstock,* 144 N. Y. Supp. 293; *Rodgers* v. *Rodgers* (Ky.) 17 S. W. 573; *Rowe* v. *Rowe* (Kan.) 115 Pac. 555; *Saunders* v. *Saunders,* (N. J.) 89 Atl. 519; *Schindel* v. *Schindel,* 12 Md. 314; *Seitz* v. *Mitchell,* 94 U. S. 580, 582; *Shaw* v. *Shaw,* 17 Conn. 193; *Shell* v. *Shell,* 2 Sneed. 721; *Smith* v. *Smith,* 119 Ga. 240; Spencer, Dom. Rel. secs. 355, 356; Story, Eq. Pl. sec. 849; *Sylvis* v. *Sylvis,* 11 Colo. 327; *Van Voorhis* v. *Van Voorhis,* 94 Mich. 76; *Vigel* v. *Hopp,* 104 U. S. 441; *W——* v. *W——,* 141 Mass. 495; *Wagner* v. *Wagner,* 36 Minn. 241; *Walter* v. *Walter,* 15 App. D. C. 333, 345; *Western U. Teleg. Co.* v. *B. & O. Teleg. Co.* 26 Fed. 56; *Wheeler* v. *Ryon,* 1 App. D. C. 148; *White* v. *Thacker,* 78 Fed. 865; 4 Wigmore, Ev. (1905) p. 3254, Sec. 2327; *Wilkins* v. *Moore,* 20 Kan. 540; *Wills* v. *Wills* (W. Va.) 82 S. E. 1092, 1093; *Woburn* v. *Henshaw,* 101 Mass. 200.

2. In addition to the above and for general and comprehensive surveys of the Law of Divorce and Separation as concerned with the doctrine of "cruelty," see—

9 R. C. L. sec. 112, pp. 333 et seq.

9 Am. & Eng. Enc. Law, 2d ed. 783 et seq.

*Mr. Henry E. Davis* for the appellee, in his brief cited:

*Fleming* v. *Fleming,* 95 Cal. 430; *Fox* v. *Patterson,* 43 App. D. C. 484; *Morrow Shoe Mfg. Co.* v. *N. E. Shoe Mfg. Co.* 57 Fed. 685; 9 R. C. L. 338; *Wiggins Ferry Co.* v. *Ohio, etc., Co.* 142 U. S. 396.

PER CURIAM: The evidence is somewhat extensive, and in many respects difficult, if not impossible, to reconcile. To analyze it within the limits of an opinion is not practicable, nor do we deem it necessary in view of the conclusion which we have reached. None the less we have considered it carefully, and as a result have grave doubt that it is sufficient to establish cruelty under the statute. Code sec. 966, [31 Stat. at L. 1345 chap. 854]; *Ogden* v. *Ogden,* 17 App. D. C. 104, 111; *Hitchcock* v. *Hitchcock,* 15 App. D. C. 81, 88, 89; *McDonough* v. *McDonough,* 20 App. D. C. 46, 47; 1 Bishop, Marr. Div. & Sep. secs. 1536 *et seq.;* Nelson, Div. & Sep. secs. 252 and 287; Spencer, Dom. Rel. secs. 355, 356; 14 Cyc. pp. 603, 605. Both parties, however, declare that they cannot, and will not, live together. Even if the court should take the view that the appellee has failed to prove her case, it could not compel her to disregard the past and return to her husband. The decree before us is but one of separation. What it commands—separation—would continue to exist even though we should reverse it. The plaintiff's obligation to maintain his wife and child would still subsist. The amount provided by the decree for that purpose is not more than it should be when we consider the income of the husband, yet it is ample. Perhaps the attorney's fees allowed are large; none the less we do not feel warranted in disturbing them. This being a chancery suit, the latitude of our discretion is wide. We think that, all things considered, equity requires that the decrees should stand.

Nothing, however, in this decision must be taken as affecting, either one way or the other, the validity of the antenuptial agreement heretofore referred to.

The decrees are affirmed, with costs.            *Affirmed.*

A petition for the allowance of an appeal to the Supreme Court of the United States was denied May 2, 1919.